## Jesse Parks *et al. versus* Seth Knowlton *et al.*

Devise: "I give to my wife the improvement of one half of my real estate, while she remains my widow, and all my household furniture to be at her disposal. I give to my four sons all the remainder of my estate, both real and personal, to be equally divided between them, share and share alike. My will is, that my executors have one year to pay one half of the legacies, and the other half in two years after my decease and the decease of my wife." The testator sold his real estate and died leaving a widow. It was *held,* that one half of the legacies was payable in one year from the probate of the will, and the other half in two years after the death of the widow.

Where a legatee, being the son of the testator, died in the testator's lifetime, leaving children, it was *held,* that all the children must join in an action for the recovery of the legacy.

THE parties stated the following facts.

This is an action brought against the executors of a will, to recover a legacy.

The will contains this clause : — " I give to my wife the improvement of one half of my real estate while she remains my widow, and all my household furniture to be at her disposal." And after some pecuniary legacies, the testator proceeds as follows : — " I give to my four sons, Artemas, William, Seth and Joseph H. Knowlton, all the remainder of my estate, both real and personal, to be equally divided between them, share and share alike. My will is, that my sons have one year to pay one half of the legacies, and the other half in two years after my decease and the decease of my wife." — " I constitute my two sons, Seth Knowlton and Joseph H. Knowlton, executors of this my last will."

Julia Parks, the wife of Jesse Parks, is a daughter of William Knowlton, who died in the lifetime of his father, the testator, leaving Julia and other children.

At the time of making the will the testator was seised and possessed of valuable real estate, which he sold before his death, taking promissory notes in payment. He held these notes at his decease, and they were inventoried by the executors. The executors settled an account in the probate court, by which it appears that there remained in their hands a sum of money for the residuary legatees, no part of which has been paid to Julia Parks as residuary legatee. After the settlement

of this account and after the lapse of one year from the probate of the will, a demand was made on the executors by the plaintiffs, for the payment of their proportion of the residuary bequest; which being refused, they brought this action to recover the same. The testator's widow is still living.

The parties submit to the determination of the Court, the questions whether the plaintiffs' action can be maintained ; and if so, what amount they are entitled to recover.

*J. Davis* and *Washburn*, for the defendants, contended that it was the intention of the testator, that his widow should be supported by half of the income of the notes instead of half of the income of the real estate, for otherwise no adequate provis ion was made for her in the will ; that this was a trust which the Court might carry into effect ; Jeremy on Eq. Jurisd. 530, 531 ; and that the legacies were not payable until one and two years after the death of the widow.

*Merrick*, for the plaintiffs, cited to the point, that the sale of the real estate was a revocation of the devise, *Ballard* v. *Carter*, 5 Pick. 112 ; Toller, 3 ; *All Souls College* v. *Cod drington*, 1 P. Wms. 598 ; *Goodtitle* v. *Otway*, 7 T. R.. 399 ; *Sparrow* v. *Hardcastle*, 7 T. R. 416, note.

*Per Curiam.* It is very clear that as to the real estate of the testator, alienated after the date of the will, by the testator, the will could have no operation. As to the personal estate, the residuary clause gives the whole to the four sons, and this operates to pass the whole of the personal property, which the testator had at his decease, as well that acquired after the making of the will, by sale of real estate, as the rest. Then the only question is, as to the time at which the legacies were payable. The will in this respect is very obscure, and it is not easy to ascertain the intent of the testator. The testator appointed two of his sons executors, there being four. The clause in question is this : " My will is, that my sons have one year to pay one half of the legacies, and the other half in two years after my decease and the decease of my wife." By the term " sons " here must be intended those sons who were appointed executors, because legacies are to be paid by them. The language is extremely ambiguous. The provision being for children and grandchildren, is to be construed most

beneficially for them. Postponing payment is a restriction on the bounty intended. Taking it as it has been considered in the argument, that the term "legacies" extends to the whole of the personal property, then, according to the argument of the defendants, all provision in the personal property for the children and grandchildren, would be postponed to one and two years after the death of the widow ; which might be a remote period. On the whole, the Court are of opinion, that by the natural and legal construction of the terms of the will, the one half of these legacies was payable in one year from the probate, when the executors became possessed of the assets, and that this construction is most consistent with the general intent of the will. We are therefore of opinion, that one half of the legacy to the plaintiff's wife was due when the demand was made, and to that part the plaintiffs are entitled.

Another question has occurred, whether this action was rightly brought, which we have not considered.

*Washburn* now contended, that the children of William Knowlton took the legacy jointly, and that a several action by one of them for her share, could not be sustained. 1 Chit. Pl. (1st edit.) 5, 10 ; *Daniels* v. *Daniels*, 7 Mass. R. 136 ; Stearns on Real Actions, 197 ; Co. Lit. 169 *b* ; *Ward* v. *Everard*, 1 Salk. 390 ; 2 Dane's Abr. 225 ; *St.* 1783, *c.* 52, § 3.

*Merrick, contrà,* relied on *St.* 1783, *c.* 24, § 17.

*Per Curiam.* The 8th section of *St.* 1783, *c.* 24, provides, that when any child, grandchild or other relation having a devise of personal or real estate, shall die before the testator, leaving lineal descendants, such descendants shall take the estate, real or personal, in the same way and manner such devisee would have done in case he had survived the testator. By this it seems clear, that the lineal descendants take a joint interest in the legacy ; and in such case they must all join in an action for the recovery of it. But the plaintiffs rely on the 17th section, in which are the following provisions. "And any executor, being a residuary legatee, may bring an action of account against his co-executor or executors of the estate of the testator in his or their hands, and may also sue for and recover his equal and proportionable part thereof ; and any

Parks
*v.*
Knowlton.

other residuary legatee shall have like remedy against the executors. And any person having a legacy given in any last will, may sue for and recover the same at the common law." If the legacy in question had been given to Julia Parks, the case would have come within this clause ; but she is not a legatee ; and the 17th section does not, like the 8th, embrace lineal descendants of a legatee. Nor do the plaintiffs come within the rule by which a statute provision is extended, by construction, to a case coming completely within the spirit but not within the letter of the statute. A legatee may die leaving numerous lineal descendants, and this would cause inconvenience, by requiring a multiplicity of suits ; it cannot, therefore, be considered as clearly within the intention of the legislature, to give to each descendant a several right of action.

*Plaintiffs nonsuit.*